

**T**HE **C**ITY OF **N**EW **Y**ORK
**L**AW **D**EPARTMENT
100 CHURCH STREET
NEW YORK, NY 10007

HON. SYLVIA HICKS-RADIX
*Corporation Counsel*

ZACHARY KALMBACH
*Assistant Corporation Counsel*
Phone: (212) 356-2322
Fax: (212) 356-3509
Email: zkalmbac@law.nyc.gov

March 23, 2022

**BY ECF**
Honorable James R. Cho
United States District Court
Eastern District of New York
225 Cadman Plaza East
Brooklyn, NY 11201

      Re: <u>Jack Norton v. The City of New York et al.</u>, 21-CV-4884 (FB) (JRC)

Your Honor:

      I represent defendants City of New York, Monahan, Shea, Warfield, and de Blasio in the above-referenced matter. I write jointly with plaintiff's counsel pursuant to the Court's Order dated January 19, 2022 and Rule F(4) of Your Honor's Individual Practices to respectfully set forth each party's position on defendants' request to stay this matter pending resolution of an open Civilian Complaint Review Board ("CCRB") investigation into the incident giving rise to this case.

      By way of background, plaintiff alleges several federal and state law claims against the City of New York, Officer Jonathan Warfield, and Sgt. Bilal Ates arising from his arrest during a protest in Brooklyn on June 2, 2020 (ECF No. 21). The Court held an Initial Conference on January 19, 2022, during which defendants informed the Court that there is an open CCRB investigation into the incident—in which at least one potential defendant is a subject—and thus defendants intended to seek a stay of this matter pending resolution of the investigation (<u>See</u> Docket Entry Dated January 19, 2022). Plaintiff indicated that he would object to defendants' request for a stay, and the Court directed that, once defendants' request for a stay is ripe, the parties should file a joint letter setting forth their positions on the matter (<u>Id.</u>) On February 1, 2022, plaintiff filed the Amended Complaint, in which he named as a defendant Sgt. Bilal Ates (ECF No. 21). Because Sgt. Ates is a subject in the ongoing CCRB investigation, defendants now request that this matter be stayed pending resolution of the investigation. The parties' positions on defendants' request are as follows:

**<u>Defendants' Position</u>**

      As noted above, there is an open CCRB investigation into the events giving rise to this case in which, upon information and belief, plaintiff is a complainant, Sgt. Ates is a subject, and Officer

Warfield is a witness.[1]  Upon information and belief, there are at least thirteen subject officers and nine witness officers involved in the investigation, and there have already been at least sixteen interviews conducted as part of the investigation.

Federal courts have inherent power and discretionary authority to stay a case if the interests of justice so require.  See United States v. Kordel, 397 U.S. 1, 12 n.27 (1970).  Indeed, "the power to stay proceedings is incidental to the power inherent in every court to control the disposition of the causes on its docket with economy of time and effort for itself, for counsel, and for litigants.'"  Louis Vuitton Malletier S.A. v. LY USA, Inc., 676 F.3d 83, 96 (2d Cir. 2012); Plaintiffs #1-21 v. County of Suffolk, 138 F. Supp. 3d 264 (E.D.N.Y. 2015).[2]

First, a stay is warranted because this Office cannot assume representation of defendant Ates—and potentially several "John Doe" defendants—while the CCRB investigation is pending.  As the Court is aware, New York General Municipal Law Section 50-k obliges the Corporation Counsel to reach a conclusion as to whether an employee acted within the scope of his employment at the time of the underlying incident before assuming that employee's representation.  See N.Y. Gen. Mun. L. §50-k.  Specifically, New York General Municipal Law Section 50-k(2) requires this Office to determine whether the individual employee "was acting within the scope of his public employment and in the discharge of his duties and was not in violation of any rule or regulation of his agency at the time the alleged act or omission occurred." N.Y. Gen. Mun. L. §50-k(2).  When "the act or omission upon which the court proceeding against the employee is based was or is also the basis of a disciplinary proceeding by the employee's agency against the employee, representation by the corporation counsel and indemnification by the city may be withheld (a) until such disciplinary proceeding has been resolved and (b) unless the resolution of the disciplinary proceeding exonerated the employee as to such act or omission." N.Y. Gen. Mun. L. §50-k(5).

When such a disciplinary proceeding or investigation is pending, this Office's ability to speak with the subjects of that investigation is limited.  This policy is intended to safeguard against a conflict of interest that may arise between the individuals being investigated and the City of New York, as "where the City maintains misconduct has occurred and the employee claims no misconduct was involved, the Corporation Counsel, whose primary function is to represent the City, cannot represent the individuals." Mercurio v. New York, 758 F.2d 862, 864 (2d Cir. 1985).  Indeed, if it is found that the individuals being investigated acted outside the scope of their employment and in violation of applicable rules or regulations, but this Office has already elected

---

[1] The CCRB investigation bears CCRB Case No. 202003813, and the status of the investigation can be found at https://www1.nyc.gov/apps/ccrb-status-lookup.

[2] In opposition to this request, plaintiff (citing Louis Vuitton), applies the test set forth in Trustees of the Plumbers & Pipefitters Natl. Pension Fund v. Transworld Mech., 886 F. Supp. 1134, 1139 (SDNY 1995).  That test applies to cases in which there are corresponding criminal proceedings involving the defendants, and thus is inappropriate here.  That is, there is no indication that any individual defendant—or potential individual defendant—has been or will be criminally charged for the alleged conduct which gave rise to this lawsuit.  Indeed, the context giving rise to this request fundamentally differs from a case in which the defendants are facing corresponding criminal charges.  For example, the first reason for this request—*i.e.*, that this Office cannot assume representation of any individual defendant while they are the subject of an ongoing disciplinary proceeding—would be non-existent had the defendant been criminally charged.

to represent them, the resulting conflict of interests could disqualify the entire Special Federal Litigation division of this Office from this matter.[3]

As such, because defendant Ates—and potentially several to-be-named "John Doe" officers—is a subject officer of the CCRB investigation into events related to this matter, this Office cannot speak to him in order to resolve representational issues, nor can this Office engage in any substantive communications with him out of concern that a conflict of interest would arise within this Office. Indeed, until this investigation is completed, defendant City will not be able to speak with potential NYPD witnesses out of concern that they may be implicated in CCRB's investigation—which, contrary to plaintiff's assertion, is a very real concern and highly prejudicial to defendants since the inability to conduct comprehensive interviews will, of course, hamper defendants' ability to mount a defense.

A stay is also warranted because, until the CCRB investigation is resolved, the parties will not have access to the investigation file. Indeed, the law enforcement privilege prevents disclosure of a pending investigation in order to, *inter alia*, "safeguard the privacy of individuals involved in an investigation, and otherwise to prevent interference with an investigation." National Congress for Puerto Rican Rights v. The City of New York, et al., 194 F.R.D 88, 93 (S.D.N.Y.) (citing In re Dep't of Investigation of the City of New York, 856 F.2d 481, 484 (2d. Cir. 1988) (citations omitted)). Additionally, these records are likely protected from disclosure while the investigation is pending by the deliberative process privilege. See Nat'l Council of La Raza v. Dep't of Justice, 411 F.3d 350, 356 (2d Cir. 2005) (inter-agency or intra-agency documents may be subject to the deliberative process privilege if they are both pre-decisional and deliberative) (internal citations and quotations omitted). Consequently, the parties will not have access to vital information, including statements from, at a minimum, Sgt. Ates and Officer Warfield, until the investigation is resolved. In response to plaintiff's opposition on this point, defendants emphasize that they are not asserting that they will not produce the complete CCRB file later in this litigation, only that the parties do not have access to the file until the investigation is complete.

Additionally, this Office respectfully submits that any prejudice plaintiff incurs as a result of a stay is minimal, and is significantly diminished by the fact that the CCRB is actively investigating his claims. Practically speaking, should a stay be denied, and should this action therefore proceed concurrently with the CCRB investigation, all parties will spend significant resources duplicating the investigative efforts currently being undertaken by the CCRB. Instead, should a stay be issued until the conclusion of the investigation, the relevant information will be compiled and presented in a way that will streamline discovery for all parties.

Finally, defendants note that authority on which plaintiff relies—namely, the consolidated protest cases pending in the Southern District—is distinguishable and should not be relied upon here. Indeed, while this case involves a discrete incident and a single plaintiff, the consolidated cases are extraordinarily far-reaching and plainly unique. Indeed, the State of New York itself is a plaintiff in the consolidated cases, along with numerous other plaintiffs who are asserting a plethora of varying allegations. Whereas, the court there may have been reluctant to stay the

---

[3] While, as plaintiff asserts, there are sometimes cases in which this Office arranges for separate representation of individual defendants, typically in such cases a conflict of interest has *already* arisen. Here, defendants request a stay with the aim to *avoid* creating a conflict.

proceedings of multiple cases pending the resolution of various disciplinary investigations, the same considerations do not apply to this discrete matter.[4]

Accordingly, defendants respectfully request that this matter be stayed until the conclusion of the CCRB investigation.

**Plaintiff's Position**

As seen in the First Amended Complaint (the "FAC", Dkt. 25), on the evening of June 2, 2020, Plaintiff Jack Norton was participating in a Black Lives Matter protest in the wake of the police murder of George Floyd when he observed a number of NYPD members assaulting two protesters. Mr. Norton stood at a distance to observe, without interfering. Suddenly, Defendant Bilal Ates approached Mr. Norton and assaulted him without warning, throwing him to the ground in a body slam-type maneuver. FAC ¶¶ 26-31. That body slam was captured on video by a bystander, Daniel Althusser, who published the video on Twitter, where it has since been viewed more than 55,000 times: https://twitter.com/altochulo/status/1268008988211400704.

On July 17, 2020, the *New York Times* published that video, along with 63 other videos of NYPD violence against protesters, as part of an investigation into NYPD uses of force during the protest that were caught on video. *See* Alison McCann, Blacki Migliozzi, Andy Newman, Larry Buchanan, and Aaron Byrd. *NYPD Says It Used Restraint During Protests: Here's What Video Shows*. The New York Times. July 17, 2020. Available online at https://www.nytimes.com/interactive/2020/07/14/nyregion/nypd-george-floyd-protests.html (last accessed March 14, 2022). The article begins with the video of Defendant Ates body slamming Mr. Norton accompanied by the reporting: "It was two hours after curfew on the sixth night of protests against police brutality in New York City. An officer in Brooklyn pushed a protester so hard that she fell backward on the pavement. *Then he shoved someone on a bicycle and picked up and body-slammed a third person into the street*…." (Emphasis added). That NYPD member is Defendant Ates. Some short time after Defendant Ates body slammed Mr. Norton, other NYPD members, referred to as Does 2-4 in the FAC, rushed at him, pushing him down to the ground and arresting him. Defendant NYPD Officer Jonathan Warfield, who eventually issued Mr. Norton a C-Summons hours later, may have been among them. Defendant Warfield accompanied Mr. Norton during his arrest processing. While in custody, Mr. Norton complained that he needed medical attention to Defendants Warfield and Doe 5, who did not provide him with prompt medical attention. FAC ¶¶ 32-37. Although Defendant Warfield swore out a C-Summons against Mr. Norton, the summons Defendant Warfield swore out was eventually marked defective by the Office of Court Administration and/or the New York City Criminal Court. Defendants apparently never filed a legally acceptable accusatory instrument with the Court. FAC ¶ 37.

Almost immediately after the June 2, 2020 incident, the New York City Civilian Complaint Review Board ("CCRB") launched an investigation, based on complaints by Mr. Norton, the videographer, and others. On June 9, 2020, Mr. Norton testified about his experiences before the New York City Council. At some point around June of 2020, Mr. Norton informed the CCRB, in

---

[4] Defendants respectfully submit that Your Honor need not follow the ruling in Rayne Valentine v. City of New York, et al., 21-cv-4867 (EK)(VMS), as it is not precedential.

substance, that he did not want to participate further in the City's investigation process at that time. Between then and December of 2021, Mr. Norton had no contact with the CCRB.

Upon information and belief, by around July of 2020, the NYPD's Internal Affairs Bureau ("IAB") had also launched investigations into the incident. For example, confronted with the July 17, 2020 *New York Times* article and the videos in it, on July 24, 2020, then-New York City Mayor, Defendant Bill de Blasio, reportedly said:

> We need to create a very consistent regular process where people can see updates on each and every one of those videos and know what the determination was, because I think people deserve it, [….] I think if there's a reason that an officer needs to be modified or suspended quickly, that should be clear. If they don't need to be, then that should be an answer and why. If there's follow up, a bigger discipline, that should be clear.

*See* Yoav Gonen and Gabriel Sandoval. *Just Five Cops Face Serious Penalties in De Blasio's Promised Accounting of NYPD Protest Misconduct Caught on Video.* The City. June 8, 2021. Available online at: https://www.thecity.nyc/2021/6/8/22525365/nypd-penalties-protest-misconduct (last accessed February 9, 2022). Upon information and belief, the IAB initiated its investigation at around the time Defendant de Blasio made that statement. Upon information and belief, on or about May 24, 2021 and June 8, 2021, the NYPD provided *The City* reporters with information about the 64 cases caught on video that The New York Times had reported about on July 17, 2020, in connection with which Defendant de Blasio had promised a "process where people can see updates…and know what the determination was." In the May 24, 2021 update, the date of the incident was listed as "UNK[nown]", the "Investigation Status" was listed as "Complete", and the "'Complete Investigation Result" was listed as "Unsubstantiated." In the June 8, 2021 version, the "Complete Investigation Result" had been changed to "Partially Substantiated." Mr. Norton has never heard from the IAB.

Mr. Norton filed a Notice of Claim on August 31, 2020 and a Supplemental Notice of Claim on November 23, 2020 related to the June 2, 2020 incident.

Mr. Norton testified at a hearing pursuant to New York General Municipal Law Section 50-h on December 10, 2020 related to the June 2, 2020 incident.

Mr. Norton filed the Complaint that initiated this lawsuit on August 30, 2021 (Dkt. 1). Defendant City and the named Defendants were served on September 9 and September 10, 2020. (Dkts.11-14). Defense counsel for Defendant City and a number of the individual Defendants first reached out to Plaintiff's counsel on September 24, 2021. Counsel for the parties had their first consultation on September 27, 2021. During our September 27, 2021 call, we spoke about, among other things, the fact that there had been a CCRB investigation, as well as the need, from Plaintiff's perspective, to identify the Doe Defendants named in the Complaint as soon as possible, given that the statute of limitations governing Plaintiff's state law claims was then set to run on February 1, 2022. At the conclusion of the call, defense counsel said he would inquire about the status of the investigation with the CCRB and agreed to take steps to attempt to identify the Doe Defendants. On September 30, 2022, defense counsel sought Plaintiff's consent to a 45-day extension of time

within which Defendants could answer or otherwise respond to the Complaint. Plaintiff consented on the condition that defense counsel would make certain efforts to identify the Doe Defendants to the extent possible before February 1, 2022. On October 1, 2021, defense counsel applied to the Court for that extension, with Plaintiff's consent, and on October 20, 2021, the Court granted the application, setting November 15, 2021 as the due date. (*See* Dkt. 16; October 15, 2021 Order). On November 17, 2021, the Court scheduled an initial pretrial conference to take place on December 9, 2021. (Dkt. 19). Defendants twice requested adjournments of the initial pretrial conference, and the Court twice granted those requests. (Dkts. 20 and 23; December 6, 2021 and December 15, 2021 Orders). On January 14, 2022, defense counsel identified the Defendant named in the Complaint as "John Doe 1" as NYPD member Billal Ates. At the January 19, 2022 initial pretrial conference, defense counsel informed the Court and Plaintiffs that Defendants would make this application to stay the case pending resolution of the CCRB matter. On February 1, 2022, Plaintiff amended the Complaint to substitute Defendant Ates's true name for the John Doe 1 placeholder. (Dkt. 25).

Meanwhile, on December 1, 2021, a new CCRB investigator – the third who has been assigned to the complaint - contacted Mr. Norton to introduce himself and to say that the CCRB was still investigating. Upon information and belief, the statute of limitations within which the CCRB must, absent exceptional circumstances, bring charges related to the June 2, 2020 incident will run on May 4, 2022. On March 11, 2022, Mr. Norton gave a recorded statement to the CCRB in connection with its ongoing investigations related to Defendant Bilal's use of force against Mr. Norton, and several other complaints related to the events that occurred at around the same time and location.

Notably, the CCRB has repeatedly described the NYPD's response to the CCRB's investigations into the summer 2020 protests as obstructive, stating, in six separate public "data snapshots":

> The CCRB has seen unprecedented challenges in investigating these complaints particularly around the identification of officers due to the failure to follow proper protocols, officers covering their names and shield, officers wearing protective equipment that did not belong to them, the lack of proper use of body worn cameras, as well as incomplete and severely delayed paperwork.

*See* CCRB March 16, 2021 Protest Cases Snapshot; June 21, 2021 Protest Cases Snapshot; September 13, 2021 Protest Cases Snapshot; October 18, 2021 Protest Cases Snapshot; and December 23, 2021 Protest Cases Snapshot, available online at https://www1.nyc.gov/site/ccrb/policy/issue-based-reports.page (last accessed March 14, 2022).

Against that backdrop, Plaintiff opposes Defendants' application to stay this matter. The only reason Defendants have offered to support their claim that a stay is necessary is the fact that there is an open CCRB investigation related to the events giving rise to this case in which Mr. Norton is a complainant and Defendant Ates is a subject officer. Defendant City has not established its entitlement to the extraordinary remedy of a stay based on the existence of the CCRB investigation alone. The interests of justice favor allowing Mr. Norton to pursue his claims and to have his day in court.

6

"'[A] court may decide in its discretion to stay civil proceedings when the interests of justice seem to require such action.'" *Louis Vuitton Malletier S.A. v LY USA, Inc.*, 676 F3d 83, 97 (2d Cir 2012) (internal citation omitted). That said, a stay is "an extraordinary remedy," *id.* at 98 (internal quotation and citation omitted), and "[t]he person seeking a stay 'bears the burden of establishing its need.'" *Id.* at 97 (internal citation omitted). "'[A]bsent a showing of undue prejudice upon defendant or interference with his constitutional rights, there is no reason why plaintiff should be delayed in its efforts to diligently proceed to sustain its claim." *Id.*, quoting *Hicks v. City of N.Y.*, 268 F. Supp. 2d 238, 241 (EDNY 2003). "The district court's decision ultimately requires and must rest upon 'a particularized inquiry into the circumstances of, and the competing interests in, the case.'" *Id.* at 99 (internal citation omitted). "The district courts of this Circuit, for example, have often utilized a six-factor balancing test first set forth by then-district court judge Chin" that considers:

> 1) the extent to which the issues in the criminal case overlap with those presented in the civil case; 2) the status of the case, including whether the defendants have been indicted; 3) the private interests of the plaintiffs in proceeding expeditiously weighed against the prejudice to plaintiffs caused by the delay; 4) the private interests of and burden on the defendants; 5) the interests of the courts; and 6) the public interest.

*Id.* at 99, citing *Trustees of the Plumbers & Pipefitters Natl. Pension Fund v Transworld Mech.*, 886 F. Supp. 1134, 1139 (SDNY 1995). Significantly, Defendant City's application does not mention or address the relevant test application to their own application, or mention or analyze any of those factors. All of them weigh in Mr. Norton's favor. In a footnote above, Defendant City accuses Plaintiff of applying the wrong standard. However, the applicable standard Plaintiff has cited comes from the same case Defendants have cited – the 2nd Circuit's *Louis Vuitton* decision – which is the relevant authority. And, although Defendant City incorrectly claims otherwise, Defendant City does not point to any other authority or standard.

As to the first two factors, there is obvious overlap of some of the issues in this case and those that would be involved in a potential criminal case. However, there is no related potential or pending criminal case against any Defendant, nor is there likely to be. Moreover, even if one were to be brought, there is nothing to indicate what would lead to that development, when that might happen, or how proceeding here would impact any such investigation or proceeding (if at all) – particularly given that the IAB has apparently concluded its investigation, without any resulting criminal prosecution. Even if a criminal investigation or prosecution were ongoing, that fact alone would not tip the scales in favor of a stay. Courts routinely deny civil stay applications where none of the civil defendants have been indicted, *see, e.g., U.S. v. District Council*, 782 F.Supp. 920, 925 (SDNY 1992) (collecting cases); *Hicks*, 268 F.Supp.2d at 242, and "even where criminal proceedings are actually pending," 782 F.Supp. at 924. The relevant test involves balancing the Fifth Amendment rights against self-incrimination of a civil defendant who is also charged with potential criminal conduct against the civil plaintiff's interest in expeditiously litigating the case and other relevant interests. *See, e.g., Louis Vuitton,* 676 F.3d at 97-100. Having to defend against civil claims while criminal charges are pending will sometimes force a civil defendant to choose between mounting a full defense in the civil case, which might have negative consequences in a

criminal context, and exercising their right to remain silent and triggering attendant potential adverse inferences in the civil context. Courts have repeatedly acknowledged that is a common situation that does not warrant a stay of the civil suit. *See, e.g., U.S. v. Simon*, 373 F.2d 649, 653 (2nd Cir. 1967); *US v. District Council*, 782 F.Supp. at 924; *Arden Way Assocs. V. Boesky*, 660 F.Supp. 1494, 1497 (SDNY 1987); *S.E.C. v. Musella*, 38 Fed.R.Serv.2d 426, 427 (SDNY 1983); *Gellis v. Casey*, 338 F.Supp. 651, 653 (SDNY 1972).

Here, there are no pending criminal charges against any Defendant. The only fact Defendants have cited in support of their application is that there is an ongoing CCRB investigation into a complaint Plaintiff lodged that involves Defendant Ates, among others. That there is an ongoing CCRB investigation alone does not warrant a stay or even implicate the core Fifth Amendment concerns that might sometimes warrant a stay when criminal investigations or prosecutions are pending. Critically, a CCRB investigation relates to a civil, not a criminal, matter. So, while a civil defendant's disclosure in a CCRB investigation or proceeding (or almost anywhere else) could theoretically be used in a criminal proceeding, Fifth Amendment concerns are not necessarily or directly implicated in such an investigation or proceeding. And, importantly, Defendant City says nothing about how moving forward in this case would prejudice any ongoing investigation or other proceeding, or any Defendant. Even if a criminal prosecution were ongoing, a stay should not issue where the moving party does not offer such basic information in support of its application. *See, e.g., U.S. v. Banco Cafetero Int'l*, 107 F.R.D. 361, 366 (SDNY 1985) (denying stay where no information was submitted showing status of prosecution or how long it might last); *Clark v. Lutcher*, 77 F.R.D. 415, 418 (M.D. Pa. 1977) (denying stay where there was no indication criminal trial would occur in the foreseeable future). Defendants are not entitled to a stay merely because there is an ongoing CCRB investigation considering the first two factors.

On the third factor, Mr. Norton has a strong private interest in proceeding expeditiously with his civil suit, and further delay will prejudice him. Plaintiffs like Mr. Norton generally have "a legitimate interest in the expeditious resolution of [their] civil case." *Jackson v. Johnson*, 985 F.Supp. 422, 425 (SDNY 1997). In this matter, Plaintiff has been actively attempting to identify the Doe Defendants, and to pursue other discovery about his experiences and injuries to support his claims against Defendants, since June of 2020. Although Defendants asserts that "any prejudice plaintiff incurs as a result of a stay is minimal, and is significantly diminished by the fact that the CCRB is investigating his claims" those asserts are untrue. It is not even clear what Defendants mean in saying the prejudice to Mr. Norton is "significantly diminished" by the mere fact of a CCRB investigation. From Mr. Norton's perspective, and counsel's, that is simply not the case.

Past that, the prejudice Plaintiff would suffer from a stay would be serious, not minimal, as Defendants claim. Mr. Norton also has a strong interest in pursuing justice and accountability through this lawsuit, in a manner he has chosen, the nature and timing of which he has some modicum of control over, as opposed to relying on the CCRB – or anyone else - to pursue justice or accountability on his behalf. With all due respect to it, the CCRB's process is no substitute for Mr. Norton's ability to pursue his claims, through counsel, in this litigation, a process that has its own inherent values. Part of the reason Mr. Norton filed his own lawsuit, notwithstanding the CCRB investigation, was to have some modicum of control over the process, scope, pace, and goals, if not the outcome, of a federal civil rights suit - a powerful accountability mechanism. A stay would much of that away from him, causing real prejudice to his ability to pursue

8

accountability in a timely and expeditious manner through litigation. Additionally, the statutes of limitations as to Mr. Norton's state law claims against the Doe Defendants has run, those applicable to Mr. Norton's federal claims against the Doe Defendants are still running, and Mr. Norton has a strong interest in identifying the Does, and amending the Complaint to name them, as soon as possible, as to both sets of claims. Moreover, with each passing day, the memories of the Does and other potential witnesses fade, and the possibility that evidence may spoil or evade discovery increases.

Further delay will cause further prejudice. And it is not clear how pursuing discovery in this case in parallel with the ongoing CCRB investigation could or would be prejudicial to the CCRB investigation. If anything, "information discovered in this action may assist in the conduct of" the CCRB investigation. *See Rivera v. City of New York*, 11-cv-4187 (NG)(MDG), 2011 U.S. Dist. LEXIS 138044, at *2-3 (EDNY Dec. 1, 2011) (rejecting application to stay civil case based on parallel CCRB investigation, noting: "this Court has supervised discovery in many other Section 1983 actions which were commenced before completion of a CCRB investigation and the parties always have proceeded with discovery before issuance of a final CCRB report"). To the extent Defendants claim, that, should the Court deny a stay, "practically speaking…all parties will spend significant resources duplicating the investigative efforts currently being undertaken by the CCRB," that claim is not supported. So are Defendants' claims that the parties "will not have access to" the CCRB investigation file. Defendants have made no showing that any privilege applies that would prevent disclosing the CCRB's investigative file. If the Court denies a stay, Plaintiffs will immediately seek, and believe they should be entitled to receive, the CCRB's entire investigative file. And, in fact, that is just what has happened in the Southern District. There, in the many cases arising from the NYPD's response to the summer 2020 Black Lives Matter protests that are consolidated for discovery purposes before Hon. Colleen McMahon and Hon. Gabriel W. Gorenstein under Dkt. No. 20-cv-8924 (the "Consolidated Actions"), in February of 2021, Judge McMahon said this when Defendants stated their intention to move for a stay based on the fact that there were ongoing CCRB and IAB investigations that were ongoing related to the summer 2020 protests: "There will be no stay.…You can make a motion. I will write deny across the front of it. There will be no stay." *See In re: NY City Policing* (20-cv-8924) Dkt. 27 at 26:23-27:10. Then, after Defendant City objected to producing records related to CCRB investigations (including open CCRB investigations), *see In re: NY City Policing* Dkt. 198 at pp. 3-4, and following oral argument, Judge Gorenstein ordered Defendant City to produce all CCRB investigation records related to both closed and open investigations arising from the relevant protests, *see In re: NY City Policing* Dkt. 207, which include the protest at which Mr. Norton was brutalized and arrested. Defendant City is in the process of supplementing that production to include the most recent CCRB files regarding investigations arising the summer 2020 protests, including the CCRB investigation related to Mr. Norton's complaint.

As to the fourth factor, the private interests of and burden on the Defendants, Defendants do not have an interest, aside from the usual interests civil Defendants have, that would be implicated by moving forward with discovery in this case.

As to the fifth factor, the interests of the courts, "a court's interests is usually best served by discouraging motions to stay," *Hicks*, 268 F.Sup.2d at 243 (citation omitted), and "judicial economy would not be achieved by a stay of this action," *Jackson*, 985 F.Supp. at 425, including

9

because imposing a stay "would disrupt the court's calendar by indefinitely postponing" discovery and trial, *IBM Corp. v. Brown*, 857 F.Supp. 1384, 1392 (C.D.Cal. 1994).

As to the sixth and last factor, continuing, rather than staying, this litigation would serve the public interest, including the "important federal interests and broad discovery and truth-seeking and the interest in vindicating important federal substantive policy such as that embodied in section 1983." *Crosby v. City of New York*, 269 F.R.D. 267, 274 (SDNY 2010) (Scheindlin, J.).

Relatedly, Defendants claim the Law Department cannot represent Defendant Ates "and potentially several 'John Doe' Defendants" until the CCRB investigation has been completed. That is so, they say, because the Law Department cannot fulfill its obligation to "reach a conclusion about whether an employee acted within the scope of his employment" while a CCRB investigation is ongoing. These hurdles arise, Defendants say, as the result of a Law Department policy not to speak with the subjects of such investigations "in order to resolve representational issues" or "engage in any substantive communications with him" until the CCRB investigation is concluded. Defendants go so far as to say that the Law Department cannot speak with not only Defendant Ates, but also "potential NYPD witnesses out of concern that they may be implicated in CCRB's investigation."

All of the prejudice Defendants say they will suffer is self-created. Mr. Norton should not be penalized for the Law Department's self-paralyzing policy choices. Defendant Ates and other NYPD members are entitled to representation unless and until there is a "disciplinary proceeding" brought by their employer. *See* New York General Municipal Law § 50-k(3)-(5). There is no requirement that the representation be the Law Department. The City regularly arranges for separate representation and can easily do so here if necessary. Whatever difficulties the Law Department may have in making its representation decisions, they appear to be the result of the Law Department's own policy choices, and should not be used as an excuse to frustrate Mr. Norton's ability to pursue his claims or delay Mr. Norton's day in court.

Additionally, Defendants claim that, if there is no stay, "the parties will not have access to" the CCRB files including records such as "statements from, at a minimum," Defendants Ates and Warfield "until the investigation is resolved." Defendants mention the law enforcement privilege and the deliberative process privilege in support of this position. However, Defendants' argument that various privileges will or might apply to certain records is a straw man argument, and Defendants' suggestion that the law enforcement or deliberative process privileges would render discovery of records in this case off-limits is flat-out wrong. When there is a CCRB investigation, it is simply not the case that everything related to it becomes "privileged." To the contrary, as to the law enforcement privilege, for example, "the City must make a clear and specific showing that" the disclosure of information obtained through an investigation "would jeopardize that investigation or future investigations." *Schiller v. City of NY*, 244 F.R.D. 273, 281 (SDNY 2007). There has been no such showing here. Indeed, it is hard to imagine how the law enforcement or deliberate process privileges could work to prevent the disclosure of CCRB records in this case, that have been – or are about to be – disclosed in the Consolidated Actions in the Southern District.

Finally, the arguments Defendants have advanced in support of their bid for a stay in this case are virtually identical to those Defendants made, and the Court rejected, in *Rayne Valentine*

*v. City of New York, et al.,* 21-cv-4867 (EK)(VMS). *See Valentine* Dkt. Nos. 17, 19-20, 22-27; 12/29/21 Order; 1/28/22 Orders. In *Valentine*, Defendants claimed an IAB investigation prevented them from speaking with, or making a representation decision regarding, an individual Defendant named in that case or accessing the relevant IAB records, also mentioning – without showing entitlement to – the law enforcement and deliberative process privileges. *See Valentine* Dkt. No. 17. However, after the Court gave Defendants an opportunity to substantiate those claims or privilege, and they did not – or could not – do so, the Court granted Defendants' application for 60 days from January 28, 2022 within which the individual Defendant who was the subject of the relevant IAB investigation may answer, and otherwise denied Defendants' stay application in its entirety. *See Valentine* 1/28/22 Orders.

In conclusion, Defendants have not made out their entitlement to a stay in this matter. Mr. Norton therefore respectfully asks that the Court deny Defendants' application and allow him to pursue discovery and otherwise prosecute his claims in this matter expeditiously.

Respectfully Submitted,

/s/ *Zachary Kalmbach*
Zachary Kalmbach
*Assistant Corporation Counsel*

cc:    **Via ECF**
       All counsel of record